IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JEANA K., | |
| Plaintiff, | **4:25CV3092** |
| vs. | |
| FRANK BISIGNANO, Commissioner of Social Security,[1] | **MEMORANDUM AND ORDER ON JUDICIAL REVIEW OF COMMISSIONER'S DENIAL OF BENEFITS** |
| Defendant. | |

Plaintiff Jeana K.[2] seeks judicial review of the denial of her application for disability insurance benefits and her application for supplemental security income benefits by the Commissioner of the Social Security Administration (the Commissioner). Filing 1. Jeana K. has moved for an order reversing the Commissioner's decision. Filing 14. In response, the Commissioner filed a motion to affirm the Commissioner's final decision denying disability benefits. Filing 18. For the following reasons, the Court grants the Commissioner's motion to affirm and denies Jeana K.'s motion to reverse.

## I.   INTRODUCTION

### A.  Procedural Background

Jeana K. applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and protectively filed for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq., on May 10, 2022. Filing 7-5 at 4, 11

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted for Leland Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The Court will refer to Plaintiff by first name and last initial to protect her privacy.

(Administrative Record (AR) 348, 355). Jeana K. alleged an onset disability date of December 1, 2021. Filing 7-5 at 4, 11 (AR 348, 355). Jeana K.'s claims were initially denied by the Social Security Administration (SSA) on April 14, 2023. Filing 7-4 at 12 (AR 261). The claims were again denied on October 11, 2023, upon reconsideration by the SSA. Filing 7-4 at 18 (AR 267).

On November 7, 2023, Jeana K. requested a hearing by an administrative law judge (ALJ) pursuant to 20 C.F.R. §§ 404.929 *et seq.*, and 416.1429 *et seq.*, following the two denials. Filing 7-2 at 19 (AR 18); Filing 7-4 at 47 (AR 296). The ALJ held a telephonic hearing to review the denial of Jeana K.'s applications on April 15, 2024. Filing 7-2 at 19, 193–219 (AR 18, 192–218). On May 9, 2024, the ALJ issued a ruling in favor of the Commissioner, denying Jeana K.'s claims for disability insurance benefits and for supplemental security income benefits. Filing 7-2 at 29 (AR 28). Jeana K. submitted a request for review of the ALJ's decision to the SSA Appeals Council on May 9, 2024. Filing 7-2 at 2 (AR 1). The Appeals Council issued an order denying Jeana K.'s request for review on February 10, 2025. Filing 7-2 at 2 (AR 1). On April 10, 2025, Jeana K. filed this action seeking judicial review and reversal of the ALJ's decision to deny her disability benefits and supplemental security income, or in the alternative, to vacate and remand this matter for further proceedings. Filing 1.

## B. Factual Background

### 1. *The Claimant and Her Alleged Disabilities*

On the alleged disability onset date of December 1, 2021, Jeana K. was 48 years old, which is defined as a "younger person" under 20 C.F.R. §§ 404.1563(c) and 416.963(c) (defining a younger person as one who is "under age 50"). Filing 7-2 at 28 (AR 27); Filing 7-5 at 4, 11 (AR 348, 355). Jeana K. "subsequently changed age category to closely approaching advanced age" under 20 C.F.R. §§ 404.1563(d) and 416.963(d) (defining "person closely approaching advanced

age" as "age 50-54"). Filing 7-2 at 28 (AR 27). Jeana K. "has at least a high school education, placing her in the fourth classification of educational ability, as defined in 20 C.F.R. §§ 404.1564 and 416.964. Filing 7-2 at 28 (AR 27). Jeana K. lives with her boyfriend in a "camper." Filing 7-2 at 201–02 (AR 200–01). Jeana K. has three children and four grandchildren, although she does not take care of any of them personally. Filing 7-2 at 46 (AR 45); Filing 7-6 at 53 (AR 437). "[Jeana K.] has not engaged in substantial gainful activity since December 1, 2021, the alleged onset date." Filing 7-2 at 21 (AR 20). Jeana K. worked part-time at Goodwill and at Thrift Holdings after the alleged disability onset date, but "this work activity did not rise to the level of substantial gainful activity." Filing 7-2 at 21 (AR 20). In her May 10, 2022, disability report, Jeana K. alleged that she has tendinitis and arthritis. Filing 7-6 at 6 (AR 390). In her June 7, 2023, "Disability Report – Appeal," Jeana K. alleges she developed "Centrilobular emohysema [sic] Nov. 3, 2022 osteo arthritis." Filing 7-6 at 47 (AR 431). In her November 8, 2023, "Disability Report - Appeal," Jeana K. alleges she developed "multilayer cervical foraminal stenosis with myelomalacia myelopathy/central canal stenosis." Filing 7-6 at 69 (AR 453).

Jeana K. avers three bases in support of her motion for an order to reverse the Commissioner's decision. First. Jeana K. argues that the Appeals Council erred in rejecting new and material evidence. Filing 15 at 5. Second, Jeana K. argues that the ALJ erred in evaluating her subjective symptoms. Filing 15 at 5. Third, Jeana K. maintains that the ALJ erred in evaluating the medical opinion evidence. Filing 15 at 5. The Court will provide a concise statement of the medical records and other evidence that are relevant to Jeana K.'s challenges to the ALJ's decision with the purpose of providing a more focused discussion.

2.   *Medical Records and Evidence*

a.   Treating Physicians' Opinions of Jeana K.'s Physical Symptoms

The Administrative Record shows Jeana K. presented before various physicians and other medical professionals between December 27, 2021, and May 23, 2024. *See generally* Filing 7-2; Filing 8-1; Filing 8-2. The Administrative Record includes the evidence Jeana K. introduced when her applications were before the Appeals Council. *See* Filing 7-2 at 35–193 (AR 34–192). These additional medical records, dated from November 3, 2022, to May 23, 2024, are considered part of the "record as a whole" for reasons articulated below and are, therefore, referenced to the extent they are relevant to Jeana K.'s challenges.

Jeana K. was first seen by Dr. Farouq Qaqish on March 14, 2022, for "restricted right shoulder movement" and "left shoulder pain for the last couple of weeks." Filing 8-1 at 17 (AR 514). Jeana K. was diagnosed with "bilateral shoulder pain, unspecified chronicity." Filing 8-1 at 19 (AR 516).

Jeana K. was referred to Dr. Lindsay Helget of Nebraska Medicine's Rheumatology Department and presented before Dr. Helget on August 25, 2022. Filing 8-1 at 36 (AR 533). In her Progress Notes, Dr. Helget stated that Jeana K. reported joint pain, particularly in her fingers and shoulders. Filing 8-1 at 36 (AR 533). Dr. Helget assessed Jeana K. with arthralgia as to an unspecified joint, right shoulder injury (sequela), and centrilobular emphysema. Filing 8-1 at 39 (AR 536).

Dr. Helget referred Jeana K. to Joel Schmidt, DPT, for a physical therapy evaluation. Filing 8-1 at 81 (AR 578). After the September 7, 2022, evaluation, Schmidt reported that Jeana K. "complains of [right] shoulder pain. . . . She cannot reach out in front of her or behind her back.

She has difficulty with chores and making food. She feels overall her shoulder is 'the same' since onset." Filing 8-1 at 81 (AR 578).

On November 2, 2022, Jeana K. attended an Initial Evaluation with Athletico Physical Therapy. Filing 8-1 at 265 (AR 762). Physical Therapist Meggan Breuer noted that Jeana K. had "significant muscular weakness with testing" and "decreased grip strength," among other physical limitations. Filing 8-1 at 265, 267 (AR 762, 764). The notes relating to her November 17, 2022, appointment record Jeana K. as "stat[ing] the shoulder is doing good. [Right] shoulder hasn't been painful, [left] has had slight pain." Filing 8-1 at 252 (AR 749). Jeana K. reported improvement in symptoms and "continue[d] to show improved tolerance with [upper extremity] tasks, reaching, and strength activities" at her November 21, 2022, appointment. Filing 8-1 at 249 (AR 746). Jeana K. was discharged on December 15, 2022. Filing 8-1 at 247 (AR 744).

Dr. Helget also referred Jeana K. to Dr. Catherine Joyce for respiratory problems. Filing 8-1 at 75 (AR 572). Dr. Joyce assessed Jeana K. on November 3, 2022, and her Pulmonary Medicine Clinic Note shows Jeana K. was diagnosed with chronic obstructive pulmonary disease (COPD) and emphysema. Filing 8-1 at 75 (AR 572). During a follow up visit on March 2, 2023, Dr. Joyce noted that a pulmonary function test (PFT) was performed after the previous visit and showed "mild obstruction." Filing 8-1 at 138 (AR 635). Dr. Joyce recorded that Jeana K. was using a prescribed inhaler multiple times a day for her respiratory issues and noted that Jeana K. stated that "her symptoms are overall much improved with the use of her inhaler." Filing 8-1 at 138 (AR 635); *see also* Filing 8-2 at 28 (AR 831).

Jeana K. followed up with Nebraska Medicine's Rheumatology Department on May 8, 2023, presenting before Dr. Sarah Szybist. Filing 8-1 at 133 (AR 630). Dr. Szybist's Progress Notes record that "[Jeana K.'s] joint pain has remained the same since she was first seen in August

of 2022." Filing 8-1 at 133 (AR 630). Dr. Szybist also stated that "[Jeana K.] reports numbness and tingling in her hand that is intermittent, but cannot identify if it affects specific fingers. She feels like her hands have become more weak over time." Filing 8-1 at 133 (AR 630). Additionally, Dr. Szybist noted that "[Jeana K.] went to [physical therapy] for her [right] shoulder and has had improvement in her pain." Filing 8-1 at 134 (AR 631).

Jeana K. presented before Dr. Travis Bailey of Nebraska Spine + Pain Center on referral by Dr. Helget on July 24, 2023. Filing 8-1 at 162 (AR 659). Dr. Bailey commented that Jeana K. was seen for "low back pain and neck pain," with her "primary concern" being that "her arms will go numb and she feels like she has weakness regularly." Filing 8-1 at 162 (AR 659). Jeana K. was seen again by Dr. Bailey on August 21, 2023, after she procured an MRI of her cervical spine. Filing 8-1 at 151–52 (AR 648–49). According to Dr. Bailey, the "MRI demonstrates multilevel cervical spondylosis[.] [T]here is diffuse flattening of the spinal cord at C3-C4, C4-C5 and moderate central canal stenosis. There is abnormal long T2 intramedullary signal C2-3 through C5-6 which appears to be myelomalacia. There is mild central canal stenosis at C2-3, C5-6 and C6-7." Filing 8-1 at 152 (AR 648). According to Dr. Bailey's notes, "Pain keeps [Jeana K.] from walking more than 1/4 mile, sitting pain prevents sitting more than 10 min, and standing pain prevents standing more than 1/2 hour." Filing 8-1 at 152 (AR 649).

Jeana K. began another round of physical therapy with Athletico Physical Therapy on August 8, 2023. Filing 8-1 at 221 (AR 718). At her Initial Evaluation, Jeana K. reported "[s]he gets radiating symptoms (numbness) on both sides, not always bilateral. She has difficulty grasping/holding items with both hands." Filing 8-1 at 221 (AR 718). During an appointment on August 11, 2023, Jeana K. "denie[d] soreness from initial visit but state[d] that she's still 'numb and tingly.'" Filing 8-1 at 219 (AR 716). During an appointment on August 16, 2023, Jeana K.

6

reported "soreness in neck region, unable to specify where. . . ." Filing 8-1 at 216 (AR 713). Jeana K. also noted "some tingling into her scapular area on right when she is writing." Filing 8-1 at 216 (AR 713). Jeana K. was re-evaluated on November 7, 2023, and she "report[ed] recent symptoms have been more numbness/tingling than pain." Filing 8-1 at 205 (AR 702).

During a September 28, 2023, follow up appointment with Nebraska Spine + Pain Center, Dr. Bailey noted that Jeana K. "continue[d] to endorse numbness in her bilateral C6 nerve distributions with tingling and pain over her right deltoid and right medial forearm. She also has significant neck pain and limitation in range of motion." Filing 8-2 at 17 (AR 820). Dr. Bailey then noted that he needed to obtain a CT scan of Jeana K.'s cervical spine and would discuss the "most appropriate step moving forward" with Jeana K. after procuring the imaging. Filing 8-2 at 17 (AR 820). That same day, Dr. Bailey referred Jeana K. for CT imaging. Filing 8-2 at 23 (AR 826). The Radiologic Consultation Report notes that the CT images showed "[p]rominent multilevel degenerative changes" consistent with the August 11, 2023, MRI. Filing 8-2 at 23–24 (AR 826–27). Although somewhat unclear from the medical records, Nebraska Spine + Pain Center apparently recommended against surgery for Jeana K. Filing 7-2 at 154, 207 (AR 153, 206).

In another follow up appointment with Nebraska Medicine's Rheumatology Department on November 9, 2023, Dr. Szybist noted "[Jeana K.] does have [osteoarthritis] in the small joints of her hands but I do think a larger source of her pain is coming from her cervical spine as recent CT has demonstrated: central canal stenosis mod/severe with slight cord deformity and mild cord compression." Filing 8-2 at 79 (AR 882). Dr. Szybist then stated, "We have sent a referral to Dr. Wilson with NSGY for second opinion regarding surgical options." Filing 8-2 at 79 (AR 882). Jeana K. was diagnosed with cervical radiculopathy and osteoarthritis at this appointment. Filing 8-2 at 79 (AR 882).

Jeana K. was also seen by Dr. Helget during the above November 9, 2023, appointment.

Filing 8-2 at 75 (AR 878). Dr. Helget reported,

> [Jeana K.'s] worst pain continues to be in her upper extremities. [Her] [h]and fall[s] asleep almost every night and at times she feels pain like a blood pressure cuff wrapping around her upper arm. She did try PT which was not overly helpful. Saw NE Spine. CT scan with central canal stenosis mod/severe with slight cord deformity and mild cord compression at C3-C4 and C4-C5 levels. Moderate central canal stenosis C5-C6, mild to moderate at C6-C7, and mild at C2-C3.

Filing 8-2 at 75 (AR 878). The notes also report that Jeana K. had "[s]trength equal bilaterally but slightly diminished" and "[s]ensation intact bilaterally." Filing 8-2 at 5 (AR 808).

After Nebraska Spine + Pain Center's apparent recommendation against surgery, Dr. Helget referred Jeana K. to Dr. Jamie Wilson for a second opinion. Filing 7-2 at 158 (AR 157). At a new patient visit with Dr. Wilson on December 8, 2023, Dr. Wilson noted that "[Jeana K.] presents with progressive symptoms of cervical myelopathy that seem to have been getting much worse over the last 5 to 6 months, together with neck pain and cervical radiculopathy features." Filing 7-2 at 151 (AR 150).

Jeana K. underwent posterior C2-T2 decompression instrumented fusion by Dr. Wilson for her underlying cervical myelopathy on May 6, 2024. Filing 7-2 at 42, 96–97 (AR 41, 95–96). The Clinical Notes relating to the surgery state that there was "[s]evere instability from C2 down to C7 inclusive, with significant cord compression C3-C6. Excellent placement of hardware seen with generous decompression performed without complication." Filing 7-2 at 97 (AR 96). During a post-operation follow up appointment on May 21, 2024, Jeana K. reported that "upper limb nervelike pain/paresthesias has since abated aside from some residual numbness and tingling within the tips of all the fingers in the right hand sparing her pinky." Filing 7-2 at 42 (AR 41).

b.  Self and Lay Assessments of Jeana K's Functionality

Jeana K. completed a function report for use by the Social Security Administration in considering her application for disability benefits and supplemental security income in August 2022. Filing 7-6 at 52–59 (AR 436–43). In her report, Jeana K. claimed her ability to work is limited due to weakness in her upper extremities. Filing 7-6 at 35 (AR 419). Jeana K. indicated that she regularly dropped her tools at work and tried "to work part-time lighter work [but] was unable to meet their quota for piece work."[3] Filing 7-6 at 35 (AR 419). Relating to her abilities specifically, Jeana K. stated,

> [I have] limited range of motion in my right arm [that] prevents me from or makes it difficult to perform many task[s] along with household chores. The pain in both my hands is hard to do anything that requires hard use for very long. Stiffness in my lower back and hips [make it] difficult[.]

Filing 7-6 at 40 (AR 424). Jeana K. also noted that she "run[s] out of breath" when "climbing [the] stairs to [her] apartment."[4] Jeana K. further stated that she "do[es] most household chores" like "laundry, dishes, vacuuming, [and] dusting." Filing 7-6 at 37 (AR 440). However, "most chores take longer than usual," and she "cannot put dishes away if over [her] head." Filing 7-6 at 37 (AR 440). Jeana K. stated that she "do[es] not want to drive or ride in vehicle for lengthy time [because] the vibration triggers tendonitis in left shoulder and left arm." Filing 7-6 at 38 (AR 441). Jeana K. stated she was able to shop for "[g]rocer[ies], car parts if needed, household goods, [and] baby items." Filing 7-6 at 38 (AR 441).

---

[3] Although somewhat unclear, Jeana K.'s reference to "part-time lighter work" appears to relate to employment with Radio Engineering in December 2022. Filing 7-2 at 204 (AR 203) (testifying that she performed "light industrial" work for Radio Engineering in December 2022).

[4] Jeana K.'s testimony appears to clarify that the stairs she references lead into her "camper," not an apartment. *See* Filing 7-2 at 201 (AR 200).

On August 11, 2022, Jeana K.'s mother, Gloria K., completed a third-party function report on behalf of Jeana K. regarding limitations to Jeana K.'s abilities. Filing 7-6 at 25–34 (AR 409–18). Gloria K. reported Jeana K. "[c]an't lift anything, arm can't be raised[,] [and] her hands lock up [and] ache." Filing 7-6 at 25 (AR 409). Gloria K. also reported that Jeana K. "[h]as trouble even lifting clothes out of [the] dryer." Filing 7-6 at 30 (AR 414). As for Jeana K.'s social activities, Gloria K. stated that Jeana K. talks in person and over the phone and text. Filing 7-6 at 29. "As far as [Gloria K.] know[s], [Jeana K.] doesn't go anywhere." Filing 7-6 at 29 (AR 416).

On August 7, 2023, Jeana K. provided another function report. Filing 7-6 at 52–59 (AR 436–43). On the subject of work, Jeana K. stated,

> [I] was unable to complete task in timely manner if at all. The reptiveness [sic] [I] was enduring was giving me debilitating pain that was affecting my focus[,] concentration[,] as well as my attitude[.] Morning stiffness was progressing to the point I needed help getting dressed and was taking longer thru [sic] the day for the stiffness to alleviate. As time went on[,] I felt like [I] was turning into concrete.

Filing 7-6 52 (AR 436). Jeana K. further stated, "Reaching forward or over head arm collapses [because] of muscle loss, no dexterity or grip in my hands to do anything for lengthy time over and over[.] [A]ny repetitive movement is going [to] hurt me later." Filing 7-6 at 57 (AR 441). Jeana K. described her house and yard work in the function report, stating that "[she does] enough house work to keep a sanitary environment" but that the "tasks are quick [because] [she] can't do it for very long[,] or it takes [a] long time [because] [she is] taking several breaks." Filing 7-6 at 54 (AR 438). Jeana K. also stated that she prepares a "variety of different meals" and shops for "necessities" in stores once or twice a week. Filing 7-6 at 54–55 (AR 438–39).

### c. Evaluation by Medical Consultants Thomas Martin, MD, and Joanell Wheeler, MD

On March 11, 2023, Medical Consultant Dr. Thomas Martin found Jeana K.'s medically determinable impairments to be centrilobular emphysema, hypertension, arthralgia (unspecified

joint), and right shoulder injury (sequela) as part of Jeana K.'s initial evaluation. Filing 7-3 at 6–7, 13–14 (AR 223–24, 230–31). The hypertension impairment was not considered severe, however. Filing 7-3 at 7, 14 (AR 224, 231). Dr. Martin concluded Jeana K.'s impairments did not precisely satisfy the diagnostic criteria of the considered listings under 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* Filing 7-3 at 7, 14 (AR 224, 231).

Dr. Martin concluded that Jeana K.'s medically determinable impairments could reasonably be expected to produce her alleged symptoms. Filing 7-3 at 6–7, 13–14 (AR 223–24, 230–31). However, Dr. Martin also concluded that Jeana K.'s statements about the intensity, persistence, and functionally limiting effects of the symptoms were not substantiated by the objective medical evidence alone. Filing 7-3 at 6–7, 13–14 (AR 223–24, 230-31).

Dr. Martin concluded that Jeana K. had a residual functional capacity (RFC) consistent with light work. Filing 7-3 at 9–10, 16–7 (AR 226–27, 233–34). Dr. Martin's report stated that Jeana K. could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. Filing 7-3 at 7, 14 (AR 224, 231). Jeana K. can occasionally climb ramps/stairs, climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl, according to Dr. Martin. Filing 7-3 at 8, 15 (AR 225, 232). Dr. Martin also stated that Jeana K. is limited in reaching overhead with both right and left arms because of "arthritis in shoulders and history of [r]ight shoulder injury." Filing 7-3 at 8, 15 (AR 225, 232). Finally, Dr. Martin concluded that Jeana K. must avoid concentrated exposure to extreme cold and heat and concentrated exposure to vibration and fumes, odors, dusts, gases, poor ventilation, and similar environmental hazards. Filing 7-3 at 9, 16 (AR 226, 233). Accordingly, Dr. Martin determined Jeana K. is not disabled for purposes of her Social Security and disability insurance benefits claims. Filing 7-3 at 10, 18 (AR 227, 234).

On reconsideration of Jeana K.'s initial SSA determination, a second medical consultant, Dr. Joanell K. Wheeler, found Jeana K. not disabled with respect to her Social Security and disability insurance benefits claims on October 11, 2023. Filing 7-3 at 24, 32 (AR 241, 249). According to Dr. Wheeler, Jeana K. has four medically determinable impairments: "Other and Unspecified Arthropathies," "Disorders of Muscle, Ligament and Fascia," "Essential Hypertension," and "Emphysema." Filing 7-3 at 21, 29 (AR 238, 246). The hypertension impairment was not considered severe. Filing 7-3 at 21, 29 (AR 238, 246). Dr. Wheeler concluded Jeana K.'s impairments did not precisely satisfy the diagnostic criteria of the considered listings under 20 C.F.R. Pt. 404, Subpt. P, App. 1. Filing 7-3 at 21, 29 (AR 238, 246).

Dr. Wheeler concluded Jeana K.'s medically determinable impairments could reasonably be expected to produce her alleged symptoms. Filing 7-3 at 21, 29 (AR 238, 246). However, Dr. Wheeler also concluded that Jeana K.'s statements about the intensity, persistence, and functionally limiting effects of the symptoms were not substantiated by the objective medical evidence alone. Filing 7-3 at 21, 29 (AR 238, 246). Dr. Wheeler concluded that Jeana K.'s statements regarding symptoms were partially consistent considering the total medical and non-medical evidence on file. Filing 7-3 at 21, 29 (AR 238, 246).

Dr. Wheeler concluded that Jeana K. had an RFC consistent with light work. Filing 7-3 at 24, 32 (AR 241, 249). Dr. Wheeler's report stated that Jeana K. could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. Filing 7-3 at 22, 30 (AR 239, 247). According to Dr. Wheeler, Jeana K. can occasionally climb ramps/stairs, climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl. Filing 7-3 at 22, 30 (AR 239, 247). Dr. Wheeler also stated that Jeana K. is limited in reaching overhead with both right and left arms because of "arthritis in shoulders and history of right shoulder injury." Filing 7-3 at 22, 30

(AR 239, 247). Finally, Dr. Wheeler concluded that Jeana K. must avoid concentrated exposure to extreme cold and heat and concentrated exposure to vibration and fumes, odors, dusts, gases, poor ventilation, and similar environmental hazards. Filing 7-3 at 23, 31 (AR 240, 248). Accordingly, Dr. Wheeler determined Jeana K. is not disabled for purposes of her claims. Filing 7-3 at 24, 32 (AR 241, 249).

### d.    Evaluation by Consultative Examiner Ian Pierce, APRN

Consultative Examiner Ian Pierce examined Jeana K. on March 28, 2023. Filing 8-1 at 118 (AR 615). Pierce reported that Jeana K. "appears to have full range of motion of all extremities bilaterally." Filing 8-1 at 119 (AR 616). Pierce noted that pain causes Jeana K. "difficulty in performing [activities of daily living] that involve lifting or carrying anything" but that "[Jeana K.'s] arthritic pain appears to be somewhat well-controlled." Filing 8-1 at 120 (AR 617). According to Pierce, "[Jeana K.] is able to raise arms over head slowly without difficulty. However, repetitive attempts did cause pain and fatigue of right arm/ rightshoulder [sic]," according to Pierce. Filing 8-1 at 120 (AR 617). Finally, Pierce records, "[Jeana K.] does have difficulty performing repetitive movement with her right arm/right shoulder and experiences pain and fatigue when attempting. This would certainly cause difficulty maintaining any type of labor/factory/machinist occupation." Filing 8-1 at 120 (AR 617).

### e.    Jeana K.'s Personal Testimony at the ALJ Hearing

On April 15, 2024, the ALJ held a hearing to review the Commissioner's denial of Jeana K.'s application for disability insurance benefits and supplemental security income benefits. Filing 7-2 at 196 (AR 195). Jeana K. appeared at the hearing via telephone and was represented by her attorney. Filing 7-2 at 196 (AR 195). Jeana K. testified that she worked for Industrial Label between 2009 and 2013 doing manufacturing related work as an industrial laborer and machine

13

operator. Filing 7-2 at 202 (AR 201). Jeana K. testified she also worked for First Data between 2014 and 2019 as an industrial laborer and machine operator. Filing 7-2 at 202 (AR 201). Jeana K. testified she worked as a heavy industrial laborer between 2020 and 2021 at Marianne Industries. Filing 7-2 at 203 (AR 202). Jeana K. "attempt[ed] to go back to work" as a part-time employee providing "hanging/sorting" services at Goodwill and Thrift Holdings after the conclusion of those jobs. Filing 7-2 at 203 (AR 202). Jeana K. also performed light industrial work for Radio Engineering in December 2022. Filing 7-2 at 204 (203). Jeana K. was not working at the time of the hearing. Filing 7-2 at 204 (AR 203).

Regarding her physical symptoms, Jeana K. testified,

I have accommodated myself to accomplish normal things that used to never be a problem. For instance, I prepare instant foods now rather than fresh foods. I mop with my – foot rather than using the mop. I sweep the carpet, and I don't vacuum. Dishes, I can still do. I've noticed become [sic] very more [sic] clumsy in handling the dishes, but I still get them done.

Filing 7-2 at 205 (AR 204). When asked about self-care, Jeana K. testified, "I don't shower as often as I used to. I use the wipes to wipe down because I don't shower as much as I used to because of my flexibility is just it's off." Filing 7-2 at 205 (AR 204). Jeana K. further testified that stairs, temperatures, and "environmental things like dust" make her emphysema worse. Filing 7-2 at 206 (AR 205).

The ALJ then inquired into Jeana K.'s surgical plans, asking whether there had been any clarification on whether Jeana K. would undergo a procedure. Filing 7-2 at 207 (AR 206). Jeana K. reported that Nebraska Spine + Pain Center did not recommend surgery, as it "might make it worse than better." Filing 7-2 at 207 (AR 206). Jeana K. testified she was sent for a second opinion with Dr. Jenny Wilson of the UNMC Neurology Department. Filing 7-2 at 207 (AR 206). Jeana

14

K. reported that surgery was scheduled with Dr. Wilson for April 25, 2024. Filing 7-2 at 207 (AR 206).

The ALJ then inquired more specifically into Jeana K.'s symptoms. Filing 7-2 at 208 (AR 207). Jeana K. stated there are times she will not drop objects, but she very often does drop items. Filing 7-2 at 208 (AR 207). Jeana K. also testified that she does not drive because of discomfort but goes grocery shopping. Filing 7-2 at 208 (AR 207). Jeana K. stated that her pain "swell[s]," and it "feels like there's blood pressure cuffs wrapped around [her] arms." Filing 7-2 at 209 (AR 208). The ALJ then asked whether Jeana K. could reach out in front of herself. Filing 7-2 at 210 (AR 209). Jeana K. testified,

> With no object in my hand, yes. If I have an object in my hand, no. I can with my left, but it's become weaker, and my right, I cannot at all. I need my left hand to help my – like, for instance, if I'm going to put something back in the refrigerator with my right hand, I need to use my left hand to hold onto my right hand and set it back in there.

Filing 7-2 at 211 (AR 210). The ALJ then asked, "So with your right arm, can you lift it on its own above your head?" Filing 7-2 at 212 (AR 211). Jeana K. replied that she could but cannot do so repeatedly throughout the day. Filing 7-2 at 212 (AR 211). Jeana K. further testified that she cannot reach out to her sides "with any kind of weight." Filing 7-2 at 212 (AR 211).

### 3. *The ALJ's Impairment Findings*

Under 20 C.F.R. § 416.920(b), an ALJ will conduct a five-step analysis to determine whether a claimant is disabled. *See Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (citing *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)). The ALJ will consider the following during that analysis:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from

performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Grindley*, 9 F.4th at 628 (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (internal citation omitted)). The claimant generally bears the burden of proving he or she is disabled at the first four steps of the process, while the ALJ bears the burden of proving a claimant is not disabled at step five. 20 C.F.R. §§ 416.912(a)-(b), 416.960(c)(2). If the ALJ finds the claimant is not disabled at steps one, two, four, or five, or finds the claimant is disabled at steps three or five, the ALJ will end the analysis. 20 C.F.R. § 404.1520(a).

At the first step of the five-step sequential process, an ALJ will find a claimant is not disabled if the claimant is working and that work is considered substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Substantial work activity is defined as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). Gainful work activity is defined as "work activity that you do for pay or profit." 20 C.F.R. § 404.1572(b). In this case, the ALJ determined Jeana K. had not engaged in substantial gainful activity, which allowed the ALJ to proceed to the second step of the analysis. Filing 7-2 at 21–22 (AR 20–21). Although the ALJ recognized that Jeana K. had worked since the alleged onset date, her wage earnings were insufficient to meet the minimum threshold for substantial gainful activity. *See* Filing 7-2 at 21-22 (AR 20–21).

At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). A claimant's impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If an ALJ finds the claimant's medically determinable impairment or combination of impairments are

16

not severe, the claimant is not disabled. 20 C.F.R. § 416.920(c). In this case, the ALJ determined Jeana K.'s centrilobular emphysema, COPD, shoulders osteoarthritis, and cervical degenerative disc disease are severe because they significantly limit her ability to perform basic work activities, which permitted the ALJ to continue to step three. Filing 7-2 at 20 (AR 19). Unlike the above medically determinable impairments, the ALJ found Jeana K.'s hypertension and obesity were not severe because "the evidence does not demonstrate the degree of limitation that is necessary to constitute a severe impairment." Filing 7-2 at 22 (AR 21). According to the ALJ, "With specific reference to hypertension, the record shows that [Jeana K.] has received medications for this disorder. When compliant with this treatment regimen, her hypertension is generally well controlled as [Jeana K.] has normal blood pressure at most office visits." Filing 7-2 at 22 (AR 21). The ALJ also found that "although [Jeana K.] has a history of obesity . . . the record does not show any quantifiable limitations attributable to this disorder. In reaching this conclusion, I have considered the potential impact of obesity in causing or contributing to co-existing impairments. . . ." Filing 7-2 at 22 (AR 21).

At the third step of the process, the ALJ will ascertain whether the claimant's impairment or combination of impairments is of a severity to meet the listed criteria in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment does meet the listed criteria the ALJ will find the claimant is disabled; if, however, the ALJ determines the claimant's impairment does not meet the listed criteria then the ALJ proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ found that none of Jeana K.'s medically determinable impairments meet the criteria "of any of the listed impairments described in Appendix I of the Regulations," which prompted the ALJ to proceed to step four of the analysis. Filing 7-2 at 21 (AR 20).

*4. The ALJ's RFC Findings*

At step four of the five-step analysis, the ALJ will first determine the claimant's RFC, then assess the claimant's RFC in consideration of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A claimant's RFC is her ability to do physical and mental work despite limitations from her impairments. 20 C.F.R. § 404.1545(a). "A disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)); *see also* 20 C.F.R. § 404.1512(a). The ALJ determines a claimant's RFC by using all relevant evidence in the claimant's case record, "including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger*, 390 F.3d at 591; *see also* 20 C.F.R. § 404.1545(a). The ALJ concluded the following pertaining to Jeana K.'s RFC determination:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, and crouch, but can never crawl. The claimant can occasionally reach overhead with the bilateral upper extremities but can frequently reach in all other directions. The claimant can frequently handle and finger. The claimant cannot work in environments with exposure to extreme cold, extreme heat, or concentrated exposure to vibration. She cannot work in the presence of concentrated exposure to dust, odors, fumes, and pulmonary irritants. The claimant cannot work in the presence of heavy machinery with fast-moving parts or unprotected heights.

Filing 7-2 at 23 (AR 22).

Following the ALJ's determination of the claimant's RFC, the claimant's RFC will be compared to their past relevant work. 20 C.F.R. § 404.1520(f); *see also* 20 C.F.R. § 404.1560(b). Past relevant work is substantial gainful activity claimant performed within the past fifteen years or fifteen years prior to the date disability must be established, and that substantial gainful activity lasted long enough for the claimant to learn to do the work. 20 C.F.R. § 416.960(b)(1); *see*

*generally* 20 C.F.R § 416.965(a). If the claimant has the RFC to do his or her past relevant work the ALJ will conclude the claimant is not disabled and the analysis ends, but if the claimant is unable to do any past relevant work or does not have any past relevant work the ALJ proceeds to the fifth and final step. 20 C.F.R. § 404.1520(f).

Here, the ALJ determined that "[t]he claimant is capable of performing past relevant work as an inserting machine operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965)." Filing 7-2 at 27 (AR 26). The ALJ based this determination on testimony by the vocational expert (VE). Filing 7-2 at 27 (AR 26). VE Jennifer Ruhnke testified that Jeana K. had past work as an inserting machine operator. Filing 7-2 at 27 (AR 26). The VE also testified "that the job as an inserting machine operator could be performed under the foregoing residual functional capacity." Filing 7-2 at 27 (AR 26). Because Jeana K.'s work as an inserting machine operator was "performed in the past 15 years" and "involves significant physical and mental activities," the ALJ found the job to be "substantial." Filing 7-2 at 27 (AR 26). Additionally, "Social Security records show that the claimant received pay from this work, including earnings in excess of the minimum monthly substantial gainful activity amounts," and the ALJ therefore found the work to be "gainful." Filing 7-2 at 27 (AR 26). Accordingly, the ALJ found "the claimant is capable of performing past relevant work as an inserting machine operator," rendering her not disabled. *See* Filing 7-2 at 27 (AR 26).

5.  *The ALJ's Findings Regarding Ability to do Other Work*

According to the ALJ, "In addition to [Jeana K.s'] past relevant work there are other jobs that exist in significant numbers in the national economy that the claimant also can perform, considering the claimant's age, education, work experience, and residual functional capacity (20

19

CFR 404.1569, 404.1569a, 416.969, and 416.969a).” Filing 7-2 at 28 (AR 27). Therefore, the ALJ made alternative findings for step five of the sequential evaluation process. Filing 7-2 at 28 (AR 27).

At the fifth and last step of the disability analysis, the ALJ considers the claimant's RFC, age, education, and work experience to determine if claimant is capable of adjusting to other work. 20 C.F.R. § 404.1520(a)(4)(v). Once a claimant proves her inability to do past relevant work, the burden of proof switches from the claimant to the Commissioner to establish that the claimant possesses an RFC to do other work and that the other work exists in substantial numbers in the national economy, though this burden is limited, and the claimant still bears the ultimate burden of persuasion to establish she is disabled. *Goff*, 421 F.3d at 790 (citation omitted); *see also* 20 C.F.R § 404.1560(c). If the claimant can make an adjustment to other work that exists in the national economy, the ALJ will find claimant to be not disabled. 20 C.F.R. § 404.1520(g). Conversely, if the claimant cannot adjust to other work or that other work does not exist in the national economy, the ALJ will find the claimant is disabled. 20 C.F.R. § 404.1520(g); *see generally* 20 C.F.R. § 404.1566. In determining a claimant's ability to adjust to other work and if other work exists in the national economy, an ALJ may call on a VE to testify at the administrative hearing. 20 C.F.R. § 404.1566(e). The VE's role is “to take into account medical limitations, including opinions as to work time limits, and offer an opinion on the ultimate question whether a claimant is capable of gainful employment.” *Swedberg v. Saul*, 991 F.3d 902, 905 (8th Cir. 2021) (quoting *Smallwood v. Chater*, 65 F.3d 87, 89 (8th Cir. 1995)).

In the present case, VE Ruhnke testified at the administrative hearing as to Jeana K.'s ability to adjust to other work and if other work existed in substantial numbers in the national economy. Filing 7-2 at 214–18 (AR 213–17). The ALJ asked Ms. Ruhnke if any jobs were

available for a hypothetical person of Jeana K.'s age, education, and work history at the light exertional level provided the hypothetical individual could "occasionally use ramps or stairs but could not use ladders, ropes, or scaffolding;" "occasionally perform balancing, stooping, kneeling, or crouching, but no crawling;" "occasionally perform overhead reaching with frequent reaching in other directions;" "could not work in environments with extreme heat or cold or concentrated exposure to vibration;" "could not work in environments with concentrated exposure to fumes, odors, dust, gases, and other respiratory irritants;" and "could not work around heavy machinery with fast moving parts or unprotected heights." Filing 7-2 at 214–15 (AR 213–14). In response to the ALJ's question, Ms. Ruhnke cited three occupations that she believed Jeana K. would be able to adjust to: "cashier" (211.462-010); "marker" (209.587-034); and "collator operator" (208.685-010). The total number of available jobs across the three cited examples came to 614,000.[5] The ALJ followed up with Ms. Ruhke by asking her a slight variation on the prior hypothetical, assuming the hypothetical individual could instead only "work in environments with no more than moderate exposure to [fumes, odors, dust, gases, and other respiratory irritants]." Filing 7-2 at 215 (AR 214). Ms. Ruhnke testified that the DOT does not define moderate in that context, and the ALJ then asked for environments "similar to [those] the public generally encounters like stores, offices, courthouse[s], campuses, or schools." Filing 7-2 at 216 (AR 215). Ms. Ruhnke cited three positions that met the hypothetical: "cashier" (211.462-010); "office helper" (239.567-010); and "sales attendant" (299.677-010). Filing 7-2 at 215–16 (AR 214–15). The total number of available jobs across the three cited examples came to 761,000. Filing 7-2 at 215–16 (AR 214–15).

---

[5] The Social Security Administration primarily relies on the Dictionary of Occupational Titles (DOT) for gathering information about occupations in the national economy. Every occupational title in the DOT has a corresponding nine-digit identification number. How to Find an Occupational Title and Code, Information Technology Associates (Apr. 11, 2020), https://occupationalinfo.org/front_580.html.

Based on the testimony of Ms. Ruhnke, along with Jeana K.'s age, education, work experience, and RFC, the ALJ concluded that Jeana K. could make a successful adjustment to other work that exists in significant numbers in the national economy. Filing 7-2 at 29 (AR 28). As a result, the ALJ found that Jeana K. was not disabled at step five of the disability determination. Filing 7-2 at 29 (AR 28).

## II. LEGAL ANALYSIS

### A. Standard of Review

A Social Security claimant must proceed through four levels of administrative review before the claimant may obtain judicial review in federal district court, including an Appeals Council review of the ALJ's decision. *Smith v. Berryhill*, 139 S.Ct. 1765, 1772 (2019); *see also* 42 U.S.C. § 405(g). Once at the federal district court level, the court will "decide whether the [ALJ]'s findings 'are supported by substantial evidence on the record as a whole.'" *Bowers v. Kijakazi*, 40 F.4th 872, 874 (8th Cir. 2022) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). "Substantial evidence [on the record as a whole] is less than a preponderance of the evidence" and is "'such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion.'" *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (quoting *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (internal citations and quotations omitted)). "Substantial evidence in the record as a whole" is a more rigorous standard than simply "substantial evidence" since the former standard requires consideration of evidence that supports or detracts from the ALJ's determination, whereas the latter does not. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1358 (8th Cir. 2022) (quoting *Koch v. Kijakazi*, 4 F.4th 656, 663 (8th Cir. 2021) (cleaned up and internal quotations omitted) ("Substantial evidence in the record as a whole" is a more "rigorous" standard than simply "substantial evidence," which is "evidence that a reasonable mind

might accept as adequate to support the Commissioner's conclusion.")). The district court "will not reverse the [ALJ]'s decision merely because [the court] find[s] that 'substantial evidence exists in the record that would have supported a contrary outcome.'" *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (citing *Schmitt*, 27 F.4th at 1358) (internal quotations omitted)). Rather, "'[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019) (quoting *Goff*, 421 F.3d at 789).

Additionally, the district court must determine whether the ALJ's decision "complies with the relevant legal standards." *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (internal citations omitted)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Id.* (quoting *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (where the ALJ committed legal error by not posing a hypothetical question to the vocational expert) (omission in original)). "In conducting our limited and deferential review of the final agency determination under the substantial-evidence standard, we must view the record in the light most favorable to that determination." *Dols*, 931 F.3d at 748 (quoting *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam)).

## B.  Discussion

As stated in the factual background, *supra*, Jeana K. asserts three grounds for reversing the ALJ's determination. Jeana K. first maintains that the Appeals Council erred in improperly rejecting new and material evidence. Filing 15 at 6. Second, Jeana K. contends the ALJ erred in assessing Jeana K.'s subjective complaints. Filing 15 at 9–11. Third, Jeana K. argues that the ALJ erred in evaluating the medical opinion evidence. Filing 15 at 12–14.

*1.  The ALJ's Decision Is Not Disturbed by the Additional Evidence*

Jeana K. asserts that the two sets of medical records introduced when Jeana K.'s applications were before the Appeals Council were improperly rejected by the Appeals Council. Filing 15 at 6. According to Jeana K., "[t]he Appeals Council *will review* a case at a party's request . . . if . . . the Appeals Council receives additional evidence that is [1] new, [2] material, *and* [3] relates to the period on or before the date of the hearing decision, *and* [4] there is a reasonable probability that the additional evidence would change the outcome of the decision. Filing 7 at 6 (citing 20 C.F.R. § 404.970(a)) (emphasis in original). According to Jeana K., the records contain "evidence of [Jeana K.'s] treatment with Dr. Wilson[,] reference to a bone density impaging [sic] and the MRI to support that surgery was warranted[,] the pre-operative visit for surgery[,] and a CT-T2 posterior instrumented fusion with C3-6 laminectomy." Filing 15 at 7 (internal citations omitted). According to Jeana K., "[t]he evidence was clearly new as it occurred after the hearing date and before the denial of the decision." Filing 7 at 7 (internal citations omitted). Jeana K. also argues the evidence is material because the "evidence relates to [Jeana K.'s] condition during the relevant period and rebuts the ALJ's implication that there was 'improvement' in response to the physical therapy." Filing 7 at 8. According to Jeana K., the fact that [she] *did* undergo additional surgery for her neck pain shortly after the decision may well have affected the ALJ's assessment of the severity and limiting effects of her pain during the time period prior to [the ALJ's] decision." Filing 7 at 9. Jeana K. therefore argues that the Court must consider whether the Appeals Council should have considered this evidence. *See* Filing 22 at 1-2, 6–7.

The Eighth Circuit has stated that when the Appeals Council denies review and "find[s] that the new evidence was either not material or did not detract from the ALJ's conclusion," the reviewing court "do[es] not evaluate the Appeals Council's decision to deny review, but rather

[the court] determine[s] whether the record as a whole, including the new evidence, supports the ALJ's determination." *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000) (citing *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992)). In the Appeals Council's denial of Jeana K.'s request for review, the Appeals Council noted, "[Jeana K.] submitted medical records from UNMC Nebraska Medicine, dated November 3, 2022[,] through May 6, 2024 (141 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision." Filing 7-2 at 3 (AR 2). The Appeal's Council also stated that,

> [Jeana K.] submitted medical records from UNMC Nebraska Medicine, dated May 15, 2024[,] through May 23, 2024 (17 pages). The Administrative Law Judge decided [Jeana K.'s] case through May 9, 2024. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether [Jeana K.] [was] disabled beginning on or before May 9, 2024.

Filing 7-2 at 3 (AR 2). Because the Appeals Council denied review of both sets of records on the basis that they "did not detract from the ALJ's conclusion," the Court's duty is to "determine whether the record as a whole, including the new evidence, supports the ALJ's determination." *Cunningham*, 222 F.3d at 500.

Although somewhat unclear, Jeana K. seems to advance a second line of argument based on the Court's duty to assess whether the entire record supports the ALJ's determination. Filing 15 at 9. Jeana K. argues, "[b]ased on the new evidence, the ALJ's decision is not supported by substantial evidence." Filing 15 at 9. Jeana K. appears to argue that this is so because the new evidence "rebuts the ALJ's implication that there was 'improvement' in response to the physical therapy." *See* Filing 15 at 8–9. Among other things, the medical records include evidence relating to Jeana K.'s treatment with Dr. Wilson, a pre-operative visit for surgery, and discharge summary notes relating to Jeana K.'s procedure. Filing 7-2 at 55, 127, 140, 147–51 (AR 54, 126, 139, 146–50). According to Jeana K., the ALJ's decision was based on "improvement" following treatment.

*See* Filing 15 at 9. However, Jeana K. maintains that the new records demonstrate Jeana K. experienced no such "improvement" because "[t]he fact that [she] *did* undergo additional surgery for her neck pain shortly after the decision" shows the "severity and limiting effects of [Jeana K.'s] pain during the time period prior to [the ALJ's] decision." *See* Filing 15 at 9. Therefore, the ALJ's decision is not supported by substantial evidence, according to Jeana K. Filing 15 at 9.

The record as a whole supports the ALJ's determination even when the additional evidence is considered. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Cropper v. Dudek*, 136 F.4th 809, 813 (8th Cir. 2025). An ALJ's decision is only disturbed when "it falls 'outside the available zone of choice.'" *Id.* (quoting *Austin*, 52 F.4th 728). The ALJ found that Jeana K. had significant limitations because of her cervical spine and accordingly gave a light work RFC with a variety of specific physical limitations. Filing 7-2 at 23 (AR 22). The ALJ's RFC was supported by Jeana K.'s daily activities and expert medical opinions, for instance, and the additional evidence does not show that the evidence the ALJ relied on to fashion a restrictive RFC could no longer be relied on by a reasonable person. Filing 7-2 at 24–27 (AR 23–26); *see Cropper*, 136 F.4th at 813. In other words, the ALJ's restrictive light work RFC remained an available choice even after the consideration of the additional evidence because nothing in the additional evidence supersedes or substantively undermines the evidence the ALJ relied on, either in isolation or in combination with the rest of the Administrative Record. *See Cropper*, 136 F.4th at 813; Filing 7-2 at 35–192 (AR 34–191). The additional evidence merely shows that surgery was advised and completed because of Jeana K.'s alleged symptoms, a course of action Jeana K. acknowledges the ALJ was informed was pending at the telephonic hearing. Filing 15 at 9 (citing Filing 7-2 at 209 (AR 208)). Jeana

26

K.'s argument that the ALJ's decision is "not supported by substantial evidence" when the additional evidence is considered is unavailing. Filing 15 at 9.

### 2. The ALJ Adequately Considered Jeana K.'s Subjective Symptoms

Jeana K. argues that the ALJ erred in assessing her subjective complaints. Filing 15 at 9. More specifically, Jeana K. seems to argue that the ALJ ignored much of the objective evidence substantiating her subjective complaints, and in doing so, failed to adequately consider Jeana K.'s symptoms in making her RFC finding. *See* Filing 15 at 9–12. According to Jeana K., the objective abnormalities relating to Jeana K.'s spine, revealed by omitted medical evidence, caused the pain and mobility limitations she complained of. Filing 15 at 10–11. Because those objective abnormalities were ignored, according to Jeana K., her subjective symptoms were improperly discounted. Filing 15 at 11. Accordingly, Jeana K. maintains that the ALJ erred in failing to consider "probative evidence that supported [Jeana K.'s neck complaints]" and therefore failed to undertake an adequate subjective symptom analysis. *See* Filing 15 at 11–12.

"All [of the applicant's] symptoms, including pain, and the extent to which [the applicant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" are considered when determining whether the applicant is disabled. 20 C.F.R. §§ 404.1529 and 416.929. Under sections 404.1529 and 416.929, the ALJ undertakes a two-step process for evaluating an individual's symptoms. 20 C.F.R. §§ 404.1529 and 416.929. On step one, the ALJ determines whether the individual has a medically determinable impairment that could "reasonably be expected to produce [his or her] symptoms." 20 C.F.R. §§ 1529(b) and 416.929(b). On step two, the ALJ evaluates the "intensity and persistence of [the applicant's] symptoms, such as pain, and determin[es] the extent to which [the applicant's] symptoms limit [his or her] capacity for work." 20 C.F.R. §§ 404.1529(c) and 416.929(c). In making this

27

determination, objective medical evidence is considered. 20 C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2). The ALJ must also consider what the applicant's "medical sources or nonmedical sources provide about [the applicant's] pain or other symptoms" when assessing the "intensity and persistence of [the applicant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). The ALJ must additionally consider certain factors relevant to symptoms, known as the *Polaski* factors, in this analysis. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007). Among other things, the *Polaski* factors require the ALJ to consider the applicant's daily activities; the duration, frequency, and intensity of the applicant's pain or other symptoms; and treatment the applicant has received for his or her symptoms. *See id.*

Relating to step one of the subjective symptom analysis, the ALJ identified cervical degenerative disc disease as a severe medically determinable impairment. Filing 7-2 at 22 (AR 21). The "impairment could reasonably be expected to cause the alleged symptoms," according to the ALJ. Filing 7-2 at 24 (AR 23). The ALJ therefore assessed the symptoms' intensity and persistence and determined the extent to which the symptoms would preclude work under the second step in the subjective symptom analysis. Filing 7-2 at 24 (AR 23). Again, this assessment requires the ALJ to consider the available objective evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Here, the ALJ cited to radiological imaging[6] finding "multilevel degenerative changes with central canal stenosis at C3-4 and C4-5." Filing 7-2 at 25 (AR 24); Filing 8-2 at 24 (AR 827). This objective evidence prompted the ALJ to note that "degenerative changes affecting

---

[6] Although the ALJ calls the CT imaging an MRI, the ALJ clearly refers to the CT images and cites to the exhibit and page numbers. *Compare* Filing 7-2 at 25 (AR 24) (saying the imaging showed "multilevel degenerative changes with central canal stenosis at C3-4 and C4-5 (Exhibit 13F/12)") *with* Filing 8-2 at 24 (AR 827) (saying the imaging showed "multilevel degenerative changes" and "central canal stenosis"). The CT images showed "degenerative changes" and "central canal stenosis" consistent with the August 11, 2023, MRI. Filing 8-2 at 24 (AR 827); Filing 7-2 at 25 (AR 24).

[Jeana K.'s] spine . . . would cause some exertional and manipulative limitations" and "could reasonably be expected to cause the alleged symptoms." Filing 7-2 at 24–25 (AR 23–24). The objective evidence that the ALJ did not cite, such as the August 11, 2023, MRI, concerns the same spinal disorder and sequence of treatment as the radiological imaging cited by the ALJ. Filing 7-2 at 25 (AR 24); Filing 8-2 at 24 (AR 827). In fact, the CT scan was ordered after Dr. Bailey reviewed the August 11, 2023, MRI with Jeana K. for the purposes of moving forward with treatment relating to her cervical spine. Filing 8-2 at 17 (AR 820). Dr. Helget and Dr. Szybist also both cited the CT as evidence of the spinal abnormalities warranting Jeana K.'s referral to Dr. Wilson. Filing 8-2 at 75, 79 (AR 878, 882). The ALJ need not consider every piece of evidence provided so long as the record is fully and fairly developed. *Wildman v. Astrue*, 593 F.3d 959, 966 (8th Cir. 2010) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence provided."). Because the ALJ, considered objective evidence substantiating Jeana K.'s spinal disorder and symptoms, the ALJ did not err in failing to cite additional radiological imaging concerning the same source of symptoms and sequence of treatment. 20 C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2).

The ALJ also considered other, non-objective evidence. Filing 7-2 at 24 (AR 23). For instance, the ALJ examined Jeana K.'s subjective complaints relating to the exertional and manipulative limitations. *See* Filing 7-2 at 24 (AR 23). Among other things, the ALJ noted that Jeana K. "indicated that she has some difficulties dressing herself and caring for her hair" and has "difficulties lifting, sitting, walking, squatting, bending, reaching, kneeling, climbing stairs, and completing tasks." Filing 7-2 at 24 (AR 23). In examining this and other evidence, the ALJ considered the *Polaski* factors, as she weighed *inter alia* the applicant's daily activities and the duration, frequency, and intensity of the applicant's pain or other symptoms. *Schultz*, 479 F.3d at

983; *Bryant v. Colvin*, 861 F.3d 779, 782 (8th Cir. 2017) (saying the ALJ is not "required to discuss each Polaski factor as long as [she] acknowledges and considers the factors before discounting a claimant's subjective complaints" (internal quotation marks omitted)).

The ALJ then determined the extent to which Jeana K.'s symptoms would affect her capacity to work. Filing 7-2 at 26–27 (AR 25–26). At this part of the analysis, the ALJ must identify any "inconsistencies in the evidence," as "[the applicant's] symptoms . . . will be determined to diminish [his or her] capacity for basic work activities . . . to the extent that [the applicant's] functional limitations and restrictions. . . can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Here, the ALJ found that Jeana K.'s statements "concerning the intensity, persistence and limiting effects of these symptoms" were "not entirely consistent with the medical evidence and other evidence in the record." Filing 7-2 at 24 (AR 23). One reason articulated by the ALJ for this finding was that two medical consultants "opined that [Jeana K.] could perform a reduced range of light work," and the ALJ found those opinions partly persuasive. Filing 7-2 at 26 (AR 25); 20 C.F.R. §§ 404.1529 and 416.929 ("We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled."). The ALJ did not discount Jeana K.'s subjective complaints. Filing 7-2 at 25 (AR 24). The ALJ instead positively recognized the limitations imposed by her subjective symptoms, substantiated through objective medical findings, and tailored an RFC to reflect such limitations. Filing 7-2 at 24–25 (AR 23–24). The ALJ merely limited the RFC to ensure that her finding was consistent with the full scope of evidence. Filing 7-2 at 26–27 (AR 25–26); 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

### 3.  The ALJ Adequately Considered the Medical Opinions

Jeana K. finally asserts that the ALJ erred in evaluating the medical opinion evidence for three reasons. Filing 15 at 12. First, Jeana K. avers the ALJ failed to weigh the medical opinions in light of their supportability and consistency in determining Jeana K.'s disability status. Filing 15 at 13; *see* Filing 22 at 5. According to Jeana K., "The ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal." Filing 15 at 12 (citing *Bonnett v. Kilolo Kijazaki*, 859 Fed. Appx. 19, 20 (8th Cir. 2021)).

Second, Jeana K. argues that the medical examiners' opinions "pre-date any cervical MRIs or recommendations for cervical surgery," and the ALJ therefore erred in relying on their opinions. Filing 15 at 13–14. According to Jeana K., the Seventh Circuit has "repeatedly emphasized that an ALJ may not rely on outdated opinions of agency consultants if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." Filing 15 at 13–14 (citing *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) (internal quotation marks omitted)). Jeana K. argues on that basis that the ALJ erred in relying on the opinions. Filing 15 at 14.

Finally, Jeana K. maintains that the ALJ failed to explain sufficiently why the medical opinion of Ian Pierce was not adopted. Filing 15 at 14. According to Jeana K., when the ALJ determined Pierce's opinion was only "vague and partially persuasive," the ALJ "ignore[d] that [Pierce] specifically wrote that [Jeana K.] should avoid machine work, which is exactly the work the ALJ found [Jeana K.] capable of performing at Step Four." Filing 15 at 14. According to Jeana K., "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Filing 15 at 14. Jeana K. argues remand is therefore warranted. Filing 15 at 14.

Jeana K. first avers the ALJ failed to sufficiently discuss the supportability and consistency of the medical examiners' opinions when determining that they were entitled to partial persuasive weight. Filing 15 at 13–14. The ALJ is required to "articulate in [her] determination of decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings" according to various factors. 20 C.F.R. § 404.1520c(b). The factors for consideration include supportability, consistency, relationship with the claimant, specialization, and others. 20 C.F.R. § 404.1520c(c). "The factors of supportability . . . and consistency . . . are the most important factors" to be considered when evaluating the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). Accordingly, the ALJ is required to explain how he or she "considered the supportability and consistency" of a medical opinion in his or her decision. *Id.* However, the ALJ need not use the words "supportability" and "consistency" in making his or her determination so long as it is clear the factors were addressed. *See*, *e.g.*, *Atwood v. Kijakazi*, No. 4:20-CV-1394, 2022 WL 407119, at *5 (E.D. Mo. Feb. 10, 2022) ("The fact that the ALJ did not use the words 'supportability' and 'consistency' is not determinative; word choice alone does not warrant reversal." (citing *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013)).

The ALJ sufficiently weighed the supportability and consistency factors here. Although the ALJ does not use the word "consistency," her finding that the opinions are "only partly persuasive" is predicated on a supportability and consistency analysis. Filing 7-2 at 26 (AR 25). The ALJ determined that the opinions were supported by internal references to substantiating objective medical evidence. Filing 7-2 at 26 (AR 25) ("Although the limitations outlined by these consultants are supported by reference to medical evidence available at these prior stages. . . .). However, certain inconsistencies between the opinions and evidence from other medical sources included in the Administrative Record prompted the ALJ to find the opinions only "partly

persuasive." Filing 7-2 at 26 (AR 25). That is, the ALJ departed from the examiners' opinions relating to "more restrictive environmental limitations" because such limitations were inconsistent with other medical evidence. Filing 7-2 at 26 (AR 25). For instance, the ALJ stated that "[w]hile the claimant does have emphysema and COPD, the record shows that the claimant has reported improvement in response to the medications prescribed by pulmonologist Catherine Joyce, MD (Exhibits 6F, 8F, and 13F)." Filing 7-2 at 26 (AR 25). Additionally, the ALJ stated that "a PFT noted that the claimant had only mild obstruction (Exhibit 8F/12)." Filing 7-2 at 26 (AR 25). The ALJ's exercise in finding the opinions partly persuasive weighed both the supportability and the consistency of the medical examiners' opinions in that the supportability factor counseled a finding of some persuasiveness and the consistency factor required that the opinions' persuasiveness be qualified. Filing 7-2 at 26 (AR 25). The ALJ therefore fulfilled her responsibility to explain the supportability and consistency factors. *See Lucus*, 960 F.3d at 1069 (saying "an ALJ's explanation need not be exhaustive" so long as the explanation is not a "boilerplate" or "blanket" statement).

Second, Jeana K. maintains that the medical opinions of Dr. Thomas and Dr. Wheeler "pre-date any cervical MRIs or recommendations for cervical surgery," and the ALJ therefore erred in relying on their opinions in making her RFC finding. Filing 15 at 13–14. An ALJ can appropriately consider the opinions of medical examiners even when those opinions predate certain medical evidence if the ALJ also considers relevant medical evidence the consultant did not consider in making the ALJ's disability finding. *Spicer v. Commissioner of Social Security*, 651 Fed.Appx 491, 493 (6th Cir. 2016) ("[A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is some indication that the ALJ at least considered these facts before assigning greater weight to an opinion that is not based on the full record." (internal quotation marks omitted)); *see, e.g.,*

33

*Thompson v. Kijakazi*, No. 3: 22-cv-5078-NKL, 2023 WL 4093389, at \*3 (W.D. Mo. June 20, 2023) ("An 'ALJ does not automatically err by crediting a medical opinion that was rendered without the benefit of a claimant's full medical record.'" (citing *Walker v. Kijakazi*, No. 6:21-CV-3235-NKL, 2022 WL 3036639, at \*6 (W.D. Mo. Aug. 1, 2022)). Thus, "[i]f the ALJ 'conducts an independent review of the evidence and takes into account portions of the record the consultant had not considered,' the ALJ is allowed to rely on opinions that predate a complete record." *Thompson*, 2023 WL 4093389, at \*3 (citing *Kuikka v. Berryhill*, No. 17-cv-374, 2018 WL 1342482, at \*10 (D. Minn. Mar. 15, 2018)).

Here, the ALJ considered the Radiological Consultation Report ordered by Nebraska Spine + Pain Center that found, through CT imaging[7] of Jeana K.'s cervical spine, "degenerative changes" consistent with the August 11, 2023, MRI. Filing 7-2 at 26 (AR 25); Filing 8-2 at 24 (AR 827). The ALJ therefore evaluated a post-dated, relevant piece of medical evidence when assessing Jeana K.'s limitations and therefore did not err in considering the opinions that did not consider such imaging. Filing 7-2 at 25 (AR 24); *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (citing *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir.2003)) (saying a court will "review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation").

Lastly, Jeana K. argues the ALJ failed to explain why Ian Pierce's medical opinion was not adopted. Filing 15 at 14. Jeana K. states that Pierce "specifically wrote that [Jeana K.] should avoid machine work, which is exactly the work the ALJ found [Jeana K.] capable of performing at Step

---

[7] Again, the ALJ calls the CT imaging an MRI. Filing 7-2 at 25 (AR 24). The ALJ clearly refers to the CT images and cites to the exhibit and page numbers. *Compare* Filing 7-2 at 26 (AR 25) (saying the imaging showed "multilevel degenerative changes with central canal stenosis at C3-4 and C4-5 (Exhibit 13F/12)") *with* Filing 8-2 at 24 (AR 827) (saying the imaging showed "multilevel degenerative changes" and "central canal stenosis").

Four." Filing 15 at 14. Jeana K. argues the ALJ erred in failing to explain why this opinion was not adopted. Filing 15 at 14. However, the ALJ did not offer the opinion Jeana K. describes. Filing 8-1 at 120 (AR 617). Rather than "specifically [writing] that [Jeana K.] should avoid machine work," Pierce noted that "[Jeana K.] does have difficulty performing repetitive movements with her right arm/right shoulder and experiences pain and fatigue when attempting. This would certainly cause difficulty maintaining any type of labor/factory/machinist occupation." Filing 8-1 at 120 (AR 617). The ALJ found this opinion, that "[Jeana K.] would have difficulty performing repetitive movements with her right upper extremity," partly persuasive. Filing 7-2 at 26 (AR 25).

The ALJ found the opinion partly persuasive and tailored Jeana K.'s RFC to the extent that the opinion was supported and consistent with other pieces of evidence in the Administrative Record. Filing 7-2 at 26 (AR 25). However, the opinion was only found partly persuasive because it was "vague." Filing 7-2 at 26 (AR 25). *Brian E. v. Kijakazi*, No. 22-cv-372, 2023 WL 21920, at *2 (D. Minn. Jan. 3, 2023) ("[D]istrict courts have continued to find that ALJs are entitled to discount vague medical opinions under the post-2017 standard."). Vagueness was an acceptable reason to find the opinion only partly persuasive, as the ALJ found the report's broad conclusion covered more ground than its supporting explanations warranted. *Brian E.*, 2023 WL 21920, at *2 (D. Minn. Jan. 3, 2023) ("[Vagueness] was an acceptable reason to find Dr. Phillippi's opinion less persuasive as it indicated that Dr. Phillippi's opinion contained less relevant 'supporting explanations' and therefore less supportability"). The report concludes, "Claimant does have difficulty performing repetitive movements with her right arm/right shoulder and experiences pain and fatigue when attempting. This would certainly cause difficulty maintaining any type of labor/factory/machinist occupation." Filing 8-1 at 120 (AR 617). However, Pierce's report does not explain how "difficulty performing repetitive movements" would make it difficult to maintain

the full sweep of the non-specific jobs Pierce identifies no matter how restrictive the eventual RFC was. Filing 8-1 at 120 (AR 617). Pierce did not document specific limitations that would make it difficult to maintain certain jobs. Filing 8-1 at 120 (AR 617). Pierce's failure to explain why all labor, factory, and machinist jobs would be difficult to perform justified the ALJ in finding the opinion only persuasive to the extent that it was supported and consistent with other sources of evidence. Filing 7-2 at 26 (AR 25); *Brian E.*, 2023 WL 21920, at *2 (D. Minn. Jan. 3, 2023) ("[Vagueness] was an acceptable reason to find Dr. Phillippi's opinion less persuasive as it indicated that Dr. Phillippi's opinion contained less relevant 'supporting explanations' and therefore less supportability").

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED:

1. Jeana K.'s Motion for an Order Reversing the Commissioner's Decision, Filing 14, is denied;

2. Defendant's Motion for an Order Affirming the Commissioner's Decision, Filing 18, is granted;

3. The Commissioner's decision is affirmed;

4. The Court will enter a separate judgment.

Dated this 19th day of December, 2025.

BY THE COURT:

Brian C. Buescher
United States District Judge

36